Missouri Pacific Railway Company v. Wm. Platzer et al.

No. 2691.

1. **Damages—Railways.**—Though a railway company when sued for damages caused by the negligent escape of fire from its locomotive engine may show that the locomotive was furnished with the most approved appliances to prevent the escape of fire and that it was carefully operated by a skillful and experienced engineer, yet if on the trial there be testimony tending to show that the fire could not have escaped in the manner testified to had the appliances been of the approved character claimed to have been used, a judgment awarding damages for the alleged negligence will not be reversed unless there be other ground of error.

2. **Same.**—If a fire which caused injury to another was kindled by sparks negligently permitted to escape from a railway locomotive engine the company is responsible, and this no matter how strenuous may have been the efforts of the railway employes to extinguish the fire after it had once been kindled. If a fire be kindled along the right of way by a railway engine, even after the highest degree of care both in the selection of safety appliances and engineers has been used, and damage is thereby threatened to adjoining property owners, it is the duty of the company to extinguish the fire if this can be done by the exercise of ordinary care.

3. **Same—Negligence.**—The failure to use proper care to prevent the spread of fire lawfully kindled is negligence for which an action will lie if damage results. Whether due diligence was used to prevent the spread of the fire is a question of fact for the court or jury trying the case.

4. **Charge of Court.**—A charge should not be given regarding an issue of fact when there is no sufficient evidence to fairly raise that issue.

5. **Cases Discussed.**—Railroad v. Shipley, 39 Md., 354; Hayett v. Railroad Co., 23 Pa. St., 374; Rolke v. Railway Co., 26 Wis., 538; Erd v. Railway Co., 41 Wis., 66; Bass v. Railway Co., 28 Ill., 1; Batchelder v. Keagan, 18 Me., 38; Barnard v. Poor, 21 Pick., 380; Tourtellot v. Renbrook, 11 Met., 462; Huney v. Nourse, 54 Me., 259, and Higgins v. Dewey, 107 Mass., 494.

Appeal from Galveston. Tried below before Hon. W. H. Stewart. The opinion states the case.

*Willie, Mott & Ballinger,* for appellant. —1. The company was not

liable because of any negligence on the part of its employes in extinguish-. ing the fire or in failing to do so, unless it was an undisputed fact that. the fire was started through negligence on the part of the defendant company, and this was not the case, hence the charge here quoted is error. 2 Wood on Railways, sec. 327; Kenny v. Railway Co., 70 Mo., 252–256;. Railroad Co. v. Shipley, 39 Md., 251.

2. There was no evidence showing that the company's employes were negligent in not extinguishing the fire. Box v. Word, 65 Texas, 159; Railway Co. v. Rider, 62 Texas, 267; Belcher v. Fox, 60 Texas, 527;. Blanton v. Mayes, 58 Texas, 422; Altgelt v. Brister, 57 Texas, 432.

3. When the court in its instructions submits issues to the jury upon which there is no evidence, and it is not clear that the jury may have been misled, the judgment must be reversed. Austin v. Talk, 20 Texas,. 167; Yarborough v. Tate, 14 Texas, 483; Earle v. Shows, 14 Texas, 583..

*A. B. Buetell* and *F. Charles Hume,* for appellees.—The court having in six several special charges given at appellant's request, instructed the jury in effect that no liability attached to appellant unless the fire was set by its negligence, there is no ground to complain of the charge imputing liability to appellant upon the hypothesis of its negligent failure to extinguish the fire, since an adverse finding on that issue could not be reached unless and until it was found that there was negligence in setting the fire.

There was evidence on each issue justifying a finding thereof against. the appellant. 3 W. & W. Ct. App. C. C., sec 50; 61 Texas, 644; 1 W. & W. Ct. App. C. C., sec. 838; 2 W. & W. Ct. App. C. C., sec. 681; 91 U. S., 470, 471; Webb v. R. W. & O. R. R. Co., 49 N. Y., 424; Field v. N. Y. C. R. R. Co., 32 N. Y., 349; Burke v. L. & N. R. R. Co., 7 Heiskell, 458, 461–463.

Appellant was liable for the negligence of its servants in failing to extinguish or to attempt to extinguish the fire, even though there had been no proof of negligence in setting the fire. And if the charge complained of be conceded to present the distinct issue of negligence *vel non* in the failure to extinguish the fire, separate from and independent of the question of negligence in setting the fire, still the charge was the law applicable to the case made by the evidence. Kenney v. Han. & St. Jo R. R. Co., 63 Mo., 101, 102; Rolke v. C. & N. W. R. R. Co., 26 Wis., 538– 540; Erd v. C. & N. W. R. R. Co., 41 Wis., 66, 67.

STAYTON, CHIEF JUSTICE.—This action was prosecuted by appellees. to recover the value of grass and other property charged to have been destroyed by a fire which it is alleged was caused by sparks and fire negligently permitted to escape from one of appellant's locomotives.

It is further alleged that the servants of appellant negligently failed to

extinguish the fire when it originated although they might have done so by the exercise of slight diligence.

The cause was tried before a jury and resulted in a verdict for appellees on which a judgment was entered.

Appellee's land seems to have been situated at a considerable distance from the railway.

The great weight of the testmiony tends to show that the locomotive from which it is claimed fire escaped was furnished with the most approved appliances to prevent the escape of fire, and that it was carefully operated by an experienced and skillful engineer and fireman, but there was testimony tending to show that fire could not have escaped, as witnesses testified it did, had the appliances to avoid its escape been such as appellants contends they were.

The judgment therefore can not be revised on the ground that it is not supported by evidence.

The court below more than once instructed the jury that appellees were not entitled to recover unless the fire had its origin in the negligence of appellant or its servants.

Two of the charges given were as follows: ·

"Railroads are authorized and allowed by law to run trains upon their tracks propelled by steam generated by fire, and they are authorized to use all reasonable means which will permit them to carry out the purposes for which they were created. They are permitted to use fire in their furnaces and are not to be restricted in their operation or held to liability because sparks of fire may be emitted from their engines. They are required to keep their engines in good order and skillfully and carefully handled, and to use and keep in good order such appliances as the experience of practical railroad men determine are among the best to prevent the escape of sparks and fire, and to prevent the accumulation of combustible material on their right of way. And they are not required to do any more. If no appliances are invented which will prevent the escape of sparks and fire and at the same time allow sufficient steam to be generated to properly propel their trains, then they are only required to use such appliances as are considered among the best by railroad experts.

"If the jury believe from the evidence that the engine at the time of the fire was in good order and skillfully handled by competent employes, and that it was supplied with appliances that are considered among the best by practical railroad men to prevent the escape of sparks and fire, and that said appliances were in good order, and that the servants and employes of defendant in charge of the train did not negligently permit the escape of sparks or fire therefrom, and that there was no accumulation of combustible material on the right of way in which the fire could

start, they will find for the defendant, even though they may believe that the fire was caused by sparks from the locomotive."

The court however gave the following charge:   .

"If you believe from the evidence that fire from defendant's engines or appliances caused the burning of plaintiff's and intervenor's property, and that the employes of defendant saw the fire after its starting, and if you believe from the evidence that they could have extinguished it by diligence, and if you believe that they were guilty of negligence in not extinguishing it, then such negligence of the employes would be imputed to the defendant company and make it liable for damages."

It is contended that it was error to give this charge, and the proposition is made that " the company was not liable because of any negligence on the part of its employes in extinguishing the fire or in failing to do so unless it was an undisputed fact that the fire was started through negligence on the part of the defendant company."

If the fire had its origin in the negligence of appellant it would be liable whether its servants made effort however streneous afterwards to extinguish it.

There is some conflict of authority as to whether it is negligence in a railway company to omit the extinguishment of a fire having its origin in the careful prosecution of its business.

In Kinney v. Railroad Company, 63 Mo., 99, it was held that if a railway company's servants saw a fire and by the exercise of reasonable care might have extinguished it, their failure to do so would render the company liable, notwithstanding the fire had its origin in the careful management of the business of the company.

The same case again coming before that court the former decision was pronounced *obiter*, and a different rule established. 70 Mo., 256.

In disposing of the question the court said: "We hold that the company is not liable because its servants neglected to extinguish the fire when they discovered it on the track. It was their duty as citizens to prevent the spread of the fire, and by their conduct on the occasion, as testified to by one of their number, they manifested a cruel and brutal indifference to the destruction of a neighbor's property, but it was not in the line of their employment, and was no more their duty to extinguish the fire than that of any other person who saw it. * * * If not liable for the origin of the fire he (the master) can not be held so on account of the neglect of a social duty by persons in his employment in a business not connected with the origin of the fire, or imposing any duty to extinguish it in addition to that which every citizen owes to society."

It may be that the inquiry in such a case is not what was within the line of the servant's employment, but what was within the line of the master's duty, and it under obligation to make within the line of the servant's employment.

To assume that a railway company is not liable for the origin of a fire caused by sparks from a locomotive having the most approved appliances to prevent the escape of fire, controlled by most careful and competent men, and on a right of way free from combustible material, is to assume as matter of law that negligence can not coexist with these things; that a railway company that has in so far used due care has discharged its whole duty, and is under no further obligation to do more for the protection of property along its line or near to it from fire that may escape from its engines, although this might be done by the exercise of but little more care.

The Court of Appeals of Maryland seems to have held that the exercise of the care specified in the two charges first above quoted would absolutely relieve a railway company from liability for an injury resulting from the escape of fire from an engine, and that no obligation whatever rested upon a railway company to extinguish a fire caused by the escape of sparks from a locomotive operated under such conditions. Railroad Co. v. Shipley, 39 Md., 254.

The cases to which we have referred were probably cases in which the owners of the land on which the fires occurred had been compensated for the right of way through condemnation proceedings or otherwise into which had entered the item of increased risk of fire from the construction and operation of the railroad in a careful manner. In some of the States this item of increased risk is taken into consideration in ascertaining the damages in condemnation proceedings, and this has sometimes been given as a reason why the exercise of the care stated in the two charges before referred to should relieve a railway company from further duty to provide against injuries resulting from fires caused in the conduct of their business.

It would seem even in such cases, in the absence of some settled rule of law prescribing the specific acts of care incumbent on a railway company, and with reference to which condemnation or other proceeding to acquire right of way may be presumed to have been conducted, that the true rule would be, that a railway company would be liable for an injury from fire resulting from the failure of the company to use due care under the circumstances of a given case; for while "the company has paid for its right of way and for all the inconveniences which are likely to result from the construction and use of its road, this does not cover all sorts of damages, * * * and it can not cover damages arising from negligence, for the law never anticipates this in assessing damages, and it never allows people to purchase a general indemnity for carelessness." Huyett v. Railroad Co., 23 Pa. St., 374.

In some of the States it is held to be the duty of a railway to extinguish a fire having its origin in the conduct of the company's business if this can be done by the exercise of ordinary care, and the inquiry as

to whether this duty arises in all cases or only in cases in which the fire originated through the company's negligence seems not to have been deemed important. Rolke v. Railway Co., 26 Wis., 538; Erd v. Railway Co., 41 Wis., 66; Bass v. Railway Co., 28 Ill., 1.

If the injury from fire escaping from a locomotive be unavoidable, the business of operating them being lawful, no damages can be recovered for a loss thus occurring unless this general rule be controlled by some constitutional provision; but if the fire have its origin in the negligence of the company, or without negligence but in the conduct of its business, then we do not see that it would not be the duty of the company in the one case as much as in the other to use proper care to prevent injury to others.

The rule that a railway company owes no duty looking to the safety of property of persons situated on or near to its line other than to use a high degree of care to prevent the kindling of fires through the escape of fire from their engines, seems to us a narrow rule.

The business is conducted for the benefit of the company, and is of great advantage to the public, but there is no hardship in requiring them not only to use a high degree of care to prevent the kindling of fires, but to extinguish them when they have their origin in the conduct of the company's business if this can be done by the exercise of ordinary care.

Every person has the right to kindle a fire on his own land for any lawful purpose, and if he uses reasonable care to prevent its spreading and doing injury to the property of others no just cause of complaint can arise; yet, although "the time may be suitable and the manner prudent, if he is guilty of negligence in taking care of it and it spreads and injures the property of another in consequence of such negligence he is liable in damages for the injury done. The gist of the action is negligence, and if that exists in either of these particulars and injury is done in consequence whereof the liability attaches, and it is immaterial whether the proof establishes gross negligence or only a want of ordinary care on the part of the defendant. Batchelder v. Keagan, 18 Me., 38; Barnard v. Poor, 21 Pick., 380; Tourtellot v. Renbrook, 11 Met., 462;" Henry v. Nourse, 54 Me., 259; Higgins v. Dewey, 107 Mass., 494.

If one who had kindled a fire on his own land should see it spreading under the influence of a strong and unexpected wind without which it would not have spread, should then use every possible effort to extinguish it before it reached the line of his own land but be unable to do so, could he then cease his efforts and be heard to say that he had discharged the entire duty cast upon him by law and the clearest principles of right, and was not liable for the destruction of his neighbor's house or barn by the fire of his own kindling if it appeared that by ordinary diligence he could have arrested the fire soon after it crossed his own line, and before it seriously injured his neighbor? We think not; for having put in mo-

tion the destructive element nothing short of the exercise of due care to prevent injury from it ought to relieve him from responsibility. He could not be heard to say that the limit of his obligation was fixed by and as narrow as the boundaries of his land.

A failure under such circumstances to follow the fire across the line between him and his neighbor, and to extinguish it whenever he could, could not be said to be only the neglect of a social duty.

If this be true as to an individual who in the exercise of the highest care has kindled a fire on his own land for a lawful purpose, and who has no suspicion that thereby his neighbor's property is imperiled, what must be the rule with a railway company claiming as all do that the business it is conducting is necessarily, when conducted with the utmost care, attended with danger to property along its line.

The very groundwork on which the two charges given by the court and together before quoted stand is that to conduct the business of such companies successfully they must use fire in engines from which with the use of the highest care fire will sometimes escape, and property through this be destroyed.

The cases show that it is not important whether the origin of a fire be in negligence, and that liability exists on the ground that the failure to use proper care to prevent the spread of fire lawfully kindled is negligence as clearly as is an originally unlawful kindling from which injury to another results.

The kindling of a fire by the escape of sparks or coals from an engine when the utmost care has been used to prevent their escape, and to prevent their kindling when they do escape, whether the fire arise on the company's right of way or on contiguous lands, can not be more lawful or the obligation to extinguish less than is it when done by an individual on his own land, and it can not be said without doing violence to reason and right that as high an obligation does not rest on a railway company to extinguish a fire when kindled under such circumstances as rests on the owner of land when fire lawfully kindled by him spreads.

The kindling in the one case is absolutely lawful, while in the other it is lawful by permission if due care be used to control it, on the theory that engines on railways can not be operated successfully without some danger of scattering fire.

Without entering into any discussion as to the degree of care a railway company should use to extinguish a fire caused by the escape of fire from its engines, we feel constrained to hold that the duty does exist however careful such companies may be to prevent the escape of fire from their engines, and that the failure to exercise such care as the circumstances of a given case would indicate to a prudent man was proper, will give cause of action for an injury resulting.

Some of the courts to whose decisions we have referred have held that

specific acts of diligence were or were not required, but we are of the opinion that whether due diligence has been used in a given case is a question of fact to be passed upon by the court or jury trying a cause when there is evidence on which such an issue fairly arises.

We are of opinion, however, looking to the evidence, that the charge would have authorized a verdict in favor of appellees for the failure of appellants' servants to do what, under the evidence, there is no reason to believe they could have done.

The charge was evidently drawn with reference to the position of employes of appellant to the fire at the time it commenced, and not with reference to the general duty of appellant; and the appellee, with a knowledge of their position and of the surroundings which tended to spread the fire rapidly, which he obtained from the other testimony, was evidently of opinion that the employes could not have arrested the spread of the fire, and such was the general tenor of the testimony.

A charge should not be given when there is not sufficient evidence fairly to raise an issue of fact to which it relates, for the giving of a charge under such circumstances induces a jury to believe that in the opinion of the court there is such evidence.

It may be that the finding of the jury would have been the same had the charge complained of not been given; but this we can not know, and because the court gave it the judgment will be reserved and the cause remanded.

*Reversed and remanded.*

Delivered February 26, 1889.